

Louis V. Fasulo, Esq.– NY & NJ
Samuel M. Braverman, Esq.– NY & NJ
Charles Di Maggio, Esq.– NY

www.FBDMLaw.com
SBraverman@FBDMLaw.com

January 13, 2022

Hon. Philip M. Halpern
United States District Judge
United States Courthouse
300 Quarropas Street
White Plains, New York 10601

Re:   *United States v. Eugene McMillian*
Dkt.  21 Cr 571 (PMH)

Dear Judge Halpern:

      I submit this memorandum in support of Eugene McMillian, who is scheduled to be sentenced by this Court on January 24, 2022, upon his guilty plea to one count of Felon in Possession of a Firearm (18 USC §922(g)(1). For the reasons stated herein and in the attached exhibits, as well as in the final Probation and Sentence Report (dated December 15, 2021), I respectfully request that this Court:

1. Impose a sentence of 40 months on Count One;

2. Impose a three-year period of post-release supervision;

3. Impose $100 in mandatory special assessment;

4. Recommend that BOP place Mr. McMillian in FCI Otisville, so that he may participate in the RDAP program; and

5. Order that BOP provide Mr. McMillian drug treatment for his chronic alcohol, marijuana, cocaine, and ecstasy use prior to being arrested in the instant matter.

      As Mr. McMillian made clear in his timely guilty plea, he accepts responsibility for his criminal conduct and its consequences. He does not diminish the impact of his conduct, and thus there is no dispute that he should receive full credit for 'acceptance of responsibility'. By acknowledging his guilt and not putting the government to a trial, he has spared the taxpayers and

1

225 Broadway, Suite 715     505 Eighth Avenue, Suite 300     1086 Teaneck Road, Suite 3A
New York, New York 10007     New York, New York 10018     Teaneck, New Jersey 07666
Tel (212) 566-6213     Tel (212) 967-0352     Tel (201) 569-1595
Fax (212) 566-8165     Fax (201) 596-2724     Fax (201) 596-2724

law enforcement the cost and use of limited resources necessary to prove what he readily concedes: he is guilty of this offense.

Mr. McMillian will address the Court at the sentencing hearing, reiterating his remorse for his life's choices and explaining his plan for going forward. This statement should be carefully considered by the Court as it gives insight into who Mr. McMillian is beyond his indictment. A defendant's statement to the Court permits "the defendant to present personal characteristics to enable the sentencing court to craft an individualized sentence." United States v. Ward, 732 F.3d 175, at 181(3rd Cir. 2013). It "is designed to temper punishment with mercy in appropriate cases, and to ensure that sentencing reflects individualized circumstances." United States v. De Alba Pagan, 33 F.3d 125, 129 (1st Cir. 1994). "The right to allocution is the right to have your request for mercy factored into the sentencing decision." United States v. Barnes, 948 F.2d 325, 329 (7th Cir. 1991). "In an age of staggering crime rates and an overburdened justice system, courts must continue to be cautious to avoid the appearance of dispensing assembly-line justice." Barnes, 331. This personal interaction between the Court and the defendant "reinforces the individuality of both the defendant and the sentencer," and reaffirms that a sentencing judge must "exercise discretion in a wise and humane way." Kimberly A. Thomas, *Beyond Mitigation: Towards a Theory of Allocution*, 75 Fordham L. Rev. 2641, 2661 (2007).

The Guidelines Range, Criminal History, the Sentencing Factors, and Relevant Jurisprudence

In the instant matter, Mr. McMillian pled guilty, pursuant to a plea agreement with the Government, to one count of Felon in Possession of a Firearm (18 USC §922(g)(1)).

In the plea agreement offered by the Government after it had conducted its investigation, and then accepted by the Defendant, the parties agreed that the below guidelines and enhancements were appropriate and sufficient. The Government sought no further stipulations or enhancements. This produced the following guideline analysis in the plea agreement (with which Probation agrees at ¶¶22-31):

| | |
|---|---|
| Base Offense level | 20 |
| Possession in relation to another felony offense | +4 |
| Acceptance of responsibility USSG §3E1.1(a) | -3 |
| Total Adjusted Offense Level | 21 |

Mr. McMillian has six criminal history points because he has three prior convictions (plus additional older offenses which are not included in the calculation of criminal history under USSG §4A1.2(e)(3)) and thus is in Criminal History Category III, which provides for a sentencing guideline of 46-57 months.

The Court, of course, is free to impose any sentence it sees fit, consistent with 18 USC § 3553(a). Many a sentencing court has held that where two possible sentences could equally be appropriate to impose for a given offense, the parsimony clause of 18 USC § 3553(a) requires the imposition of the lesser term. If this Court were to impose another six months or twelve of prison above the requested 40 months, it will not advance any of the §3553(a) factors, nor make society

measurably safer, nor promote justice or respect for the law, nor serve as a general deterrent, nor do much beyond placing an additional burden on the taxpayers for the additional 180 or 365 days and nights in jail (calculated by Probation as an additional $22,129-$44,258). What benefit to society for what cost? A sentence of 40 months incarceration for Mr. McMillian addresses and satisfies the §3553(a) factors of reflecting on the seriousness of the offense, general deterrence, and providing just punishment for the offense.

The Supreme Court held in United States v. Booker, 543 US 220, 258 (2005), that the district court has the duty to consider the recommended guideline range along with the other factors listed in §3553(a).[1] In 2009, the Supreme Court went further in Nelson v. United States, 129 S.Ct. 890 (2009) by bluntly stating "The Guidelines are not only *not mandatory* on sentencing courts, they are also not *presumed* reasonable." [Emphasis in original] Nationally, Circuit Courts have supported this downward pressure on sentencing by reiterating that the duty of the sentencing court is to impose the lowest sentence available that satisfies all the criteria of §3553(a). *See, e.g.,* United States v. Dorvee, 616 F.3d 174, 183-184 (2nd Cir., 2010) ("In conducting this review, a district court needs to be mindful of the fact that it is 'emphatically clear' that the 'Guidelines are guidelines that is, they are truly advisory'", citing to United States v. Cavera, 550 F.3d 180, 189 (2nd Cir., 2008) (*en banc*); *See also* United States v. Fernandez, 443 F.3d 19, 27 (2d Cir.2006) (declining to establish "any presumption, rebuttable or otherwise, that a Guidelines sentence is reasonable"); *and also* United States v. Ministro-Tapia, 470 F.3d 137, 142 (2d Cir. 2006) ("Plainly, if a district court were explicitly to conclude that two sentences equally served the statutory purpose of §3553, it could not ... impose the higher.")

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Gall v. United States, 128 S.Ct. 586, 597 (2007), citing Koon *v.* United States, 518 U.S. 81, 113 (1996). Gall reinforced the historical and essential role that district judges play in personally assessing a person and his offense and fashioning an appropriate sentence, as opposed to being beholden to some arbitrary or impersonal standard. "We reject, however, an appellate rule that requires 'extraordinary' circumstances to justify a sentence outside the Guidelines range. We also reject the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." Gall at 597.

The standout negative §3553(a) factors are Mr. McMillian's repeat criminal conduct over a 25-year period and the drug selling crimes he committed to support himself and his family. Society

---

[1] 18 USC § 3553(a) sets forth the criteria for a sentencing court to use in evaluating what a District Court should consider in imposing a sentence is sufficient but not greater than necessary to achieve all the goals of sentencing, including: The nature and circumstances of the offense and the history and characteristics of the defendant (18 U.S.C. § 3553 (a)(l)); and the need for the sentence imposed to: Reflect the seriousness of the offense, Promote respect for the law and to provide just punishment for the offense, To afford adequate deterrence to criminal conduct; Be aware of the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; And to protect the public from further crimes of the defendant (18 U.S.C. § 3553 (a)(2)).

3

must be protected from these criminal acts, and it is appropriate to fashion a sentence that specifically deters him from committing future offenses, promotes respect for the law, and generally deters others from committing similar offenses. There is no doubt that the time that Mr. McMillian will serve will segregate him from his family and society when he will miss essential milestones in his mother's and his children's lives. He has already effectively segregated himself from his two children by his incarceration. The proposed sentence would both personally deter him as well as send a clear message to the community that criminal activity will be punished appropriately and severely.

Mr. McMillian does have an intact and supportive nuclear family. As his sister Felicia Corbet said to Probation (¶¶ 52-53):

> [He] is an "attentive person, has good father characteristics, and loves his family." She confirmed that she and Mr. McMillan have a close relationship and noted that they are "two peas in a pod". Their mother called them "twins." As an older sister, Corbett stated that she felt the need to "always protect" Mr. McMillan. Being six years older than him, she stated that they were always close and shared the same friends. She reported that they were raised in the church, would attend vacation Bible school, and attended church functions in the South with their parents. Corbett corroborated that Mr. McMillan did receive "spoiled treatment" because he was the only boy, and his sisters were far [above him] in age which made them able to buy things for themselves. Nonetheless, she stated that her parents "never really told them no." Corbett shared that Mr. McMillan would lend his friends his clothes because he felt bad for the children that were not able to get the same things he did.

There are two substantial, non-family factors which work in favor of a below guideline sentence under §3553(a): the substantial impact on him that the COVID pandemic has had, and Mr. McMillian's substantial impairments of his physical health.

One of the most damaging aspects of Mr. McMillian's incarceration has been the impact of COVID-19. During the 22 months he has been in the Orange County Jail and Putnam County Jail, every one of them have been during the pandemic. During the worst of his time, he was on near-total lockdown for 23 hours per day, without any visit from family members at all, he didn't leave his cell for more than a week, eating every meal served cold. He was given one bar of soap per week for every need (body, clothes, hair) and washed himself with water from a sink. He had no allowance for exercise, interaction with other prisoners, communal worship services, fresh air, researching his case in the law library, or even stretching his legs. The conditions of COVID-induced isolation are painfully similar to punitive isolation. Although such measures may be necessary to contain the spread of COVID, the impact on the clients is emotionally severe and debilitating. It would be reasonable to hold that such persistent depravation and lockdown is "double time" for sentencing calculations and, because §3553(a) allows for the conditions of confinement to be considered by this Court, reducing the term actually imposed by additional time to account for 22 months of such harsh conditions. For all of the isolation that jail-imposed COVID protocols had on Mr. McMillian, he contracted COVID anyway.

For the healthiest inmate, jail is a depravation of the basic enjoyments of life, such a freedom to do what you want with your life. COVID protocols expand that deprivation to every enjoyment of

life, including the basic connection with other people. For a sick inmate, the protracted time between medical treatments (if they come at all) means extended pain and suffering that people outside of the prison walls will never have to experience. For a sick inmate who lives in prison for 22 months of the COVID pandemic, jail is a terrifying abyss of "I hope I don't die tonight" thoughts every single day. That is Mr. McMillian's current existence.

Mr. McMillian suffers from a heart condition (tear of his cardiac artery), lung conditions (chronic breathing issues including asthma), fatty liver, high cholesterol, high blood pressure, high blood sugar, chronic gastro-intestinal issues (including chronic bloody stools during his current incarceration), blood clots in his legs, kidney issues, and memory issues related to repeated head trauma. He was arrested in the instant case when he had a heart attack in a diner and was found unconscious by police officers. He had a motorcycle accident which required surgical repair and he now has metal rods in his legs and torn ligaments (which didn't heal correctly) leading to trouble walking. He has chronic cardiac pain, shortness of breath, and stomach pain. Every day in Mr. McMillian's life is stress and suffering.

In asking for a non-guideline sentence, it not argued that the conduct for which Mr. McMillian will be sentenced was insignificant, nor should it be viewed that 40 months in prison is "a mere slap on the wrist." The basis for this request is that the requested sentence is still a significant penalty, is sufficient to satisfy the concerns of §3553(a), is not greater than necessary, and makes the punishment fit both the offense and the offender.

Conclusion

For the reasons stated herein, I respectfully request that this Court impose concurrent sentences of no more than a total of 40 months on Count One, followed by a three-year period of post-release supervision, and the $100 mandatory special assessment. The Court should not impose a fine as Mr. McMillian has no assets and no ability to pay a fine. It is requested that this Court recommend that BOP house Mr. McMillian during his incarceration FCI Otisville. It is further recommended that this Court request the BOP to afford Mr. McMillian entry into the RDAP intensive drug treatment program to address his long history of alcohol, marijuana, cocaine, and ecstasy abuse.

I thank the Court for its consideration.

Respectfully submitted,

*Sam Braverman*

Samuel M. Braverman
Fasulo Braverman & Di Maggio, LLP
225 Broadway, Suite 715
New York, New York 10007
Tel (212) 566-6213
SBraverman@FBDMLaw.com

5